And the last case on the docket is John Berene and Cameron Longson v. Nationstar Mortgage. Mr. Golant is here for the appellates. Mr. Gottlieb is here for the appellee. And Mr. Golant, you may begin when you are ready. Good morning, and may it please the Court. My name is Jeffrey Golant, and I represent the appellants John Berene and Cameron Longson. Wait one second. Let's leave the courtroom, and then we can begin. All right. The threshold issue in this appeal is whether the Rucker-Feldman Doctrine properly applied to this case at all. We have submitted supplemental authority cases that come from the Sixth Circuit and the Fourth Circuit, and these cases strongly support our contention that it does not. In Vicks v. Ocwen Loan Servicing, the Court addressed a very similar fact pattern as the case of Barr. A borrower disputed a mortgage servicer's handling of the loan that resulted in a foreclosure. And consistent with the Supreme Court's holding in ExxonMobil, the Fourth Circuit and Vicks determined that the Rucker-Feldman dismissal in that case was inappropriate, and the question was best evaluated in terms of preclusion and res judicata or collateral estoppel and not in terms of jurisdiction. Well, we're not in the Fourth Circuit. We're in the Eleventh Circuit, and it seems to me that Fourth Circuit case conflicts with our opinion in Cassell v. Tillman. I would submit that it does not conflict with post-ExxonMobil precedent because, as the Supreme Court said in ExxonMobil, the Rucker-Feldman doctrine does not apply simply because a party denies a conclusion that was reached in the state court litigation. If there is an independent federal issue, then jurisdiction exists, and according to the Supreme Court, the issue is one of preclusion. And in this case, there was an independent issue, and the issue was the mortgage servicer's compliance with the Real Estate Settlement Procedures Act. And that is an issue that arose subsequent to the entry of the state court judgment. All right. His claim here is that RESPA was violated because his payments were misapplied and there was improper forced place insurance. It was flood insurance was required, and that's right? That's correct. Okay. I'm trying to figure out whether or not these issues could have been raised in the state court foreclosure proceedings. Did he have an opportunity to raise these claims in state court via an affirmative defense or a counterclaim or an answer? He certainly could have raised, as an affirmative defense, whether or not the charges were correct. However. So that's one of the factors that we look at in determining whether or not Ricker-Feldman applies. Did he have an ample opportunity to litigate these claims in the prior proceeding in state court, right? Well, Judge, I would submit there's a distinction, and this Court drew that distinction in the Renfro case. There is a distinction between the opportunity to litigate the underlying error, and he had that, versus what happens when the RESPA error resolution procedures are invoked. And as this Court said in Renfro, RESPA makes an old error new again, and it triggers duties on the servicer. Now, those duties wouldn't have applied in foreclosure litigation, and I think that's a lot of the reason why we have RESPA. Because in enacting RESPA, Congress is aware of the great imbalance of resources and access to information between the mortgage servicer and a consumer. And if the burden was placed on the borrower to prove an affirmative defense of a servicing error, that's a much heavier burden than simply invoking RESPA, notifying the servicer that they believe there's a problem, and requiring the servicer to conduct a reasonable investigation and provide a response and explain if that were its determination, why it determined that there was no error. It wouldn't really have been able to make that determination here. And the fact that my client was unable to successfully persuade the State Court of his contention doesn't change the fact that there's a material distinction between his rights as a litigant in the State Court foreclosure and his rights as a protected consumer under RESPA. Okay. You're making the argument now that this should not be considered inextricably intertwined. I really have a hard time saying that. But that's your argument now? Correct. Okay. But, I mean, that is the Eleventh Circuit law, inextricably intertwined, and you believe they are not. Do you also believe that the amended complaint starts the time, gives us a new time for looking at Brooker Feldman? Yes. We would make that contention because at the time that the complaint was amended, in the operative complaint that the District Court dismissed, the State Court foreclosure had been vacated. That's a very important development during the pendency of this litigation. I couldn't really find any case that basically decided this issue. That is, normally you judge jurisdiction from the time of filing the original complaint, but you have Rooker Feldman, a narrow doctrine that is in derogation of federal jurisdiction. And so you have an amended complaint, which presumably you could file a whole new complaint, and then Rooker Feldman wouldn't be an issue from that point of view. Exactly. So that's something that I think would push one to interpret or to limit the doctrine. On the other hand, the general rule is time of filing of the complaint, and you make the decision not to file a new complaint. I feel pushed by two different policies and with no answer. And I guess the answer is, how should one resolve this? I think the court needs to look at the purpose of the Rooker Feldman doctrine. And the purpose of the Rooker Feldman doctrine is a narrow one. It is to prevent litigants from resorting to federal court to seek review of State Court judgments and to obtain redress of injuries caused by State Court judgments. And simply logically, that cannot happen once a State Court judgment is vacated, as it was here. The case cited in our brief, and of course preclusion is an entirely different issue, but under Florida law, we found one case where it found the vacated judgment would have no collateral estoppel arrest judicata effect because it was void. So the purpose of the doctrine is to prevent the federal court from exercising appellate jurisdiction over a State Court judgment. When that judgment is vacated, now granted, and my client did and would quarrel with the factual findings in that judgment, but ExxonMobil says that's okay. So it is not a question of whether the State Court judgment will be upheld and honored once it's vacated. There is some tension between the State Court's judgment and my client's view of the facts. But as ExxonMobil says, that question, that tension must be analyzed under preclusion principles and not under Rooker-Feldman principles. So given that the overarching purpose of the Rooker-Feldman doctrine is limited, and it is a narrow doctrine, and the concern is limited to the federal district court exercising an appellate review, once that judgment has been vacated, it simply can't do that. Another exception to the Rooker-Feldman doctrine is whether the federal plaintiff had an opportunity to litigate the federal claim in State Court. Now, we had an opportunity to litigate the underlying facts, but as the Sixth Circuit points out in its recent Marius v. Chase Home Finance slip decision, a RESPA claim and a foreclosure claim are materially different. The elements have little in common. Well, that goes back to my original question because it seems to me the claims that he raises in his district court complaint per RESPA could have been raised in the State Court foreclosure proceeding. They misapplied my payments. That could be a defense to foreclosure. You misapplied my payments, and you were wrong to require that I buy flood insurance, or you were wrong to buy this flood insurance for me because it wasn't required. He could have raised that in the State Court. In the State Court proceeding, couldn't he? I don't see any reason why he couldn't have done that. He could have disputed the charges, and he could have disputed the payment application. He couldn't have raised the claim under RESPA until he had notified the servicer of the error, received the servicer's response, and had the benefit of that response when evaluating the servicer's position. Notably, the foreclosure complaint didn't say we're foreclosing on you because we placed flood insurance. That issue would have required quite a bit of digging. All we know is the district court cited to the complaint, right? Do we know what was in that complaint? In the State foreclosure proceeding. My memory isn't perfect on this. I believe it is in the record. Okay, all right. I'm just not sure what you're doing with Exxon. Exxon seemed to me a timing case. The State Court judgment didn't happen until after the federal court had jurisdiction, right? It didn't defeat federal court jurisdiction. Maybe I got my cases confused. I thought that's what Exxon Mobil was all about. Yes, Exxon Mobil, the facts of that case, Your Honor, is correct. I don't understand what Exxon Mobil has to do with the inextricably intertwined business. Well, because Exxon Mobil does explain in dicta that Rooker-Feldman doesn't arise simply because the federal plaintiff denies a conclusion that the State Court reached. And I believe that's the entire basis for the application of the Rooker-Feldman doctrine in this case. The argument was made— But the holding of Exxon is all about the timing. That's what Exxon is about. And you're not going to get out of an 11th Circuit case based on dicta. You're going to get out of an 11th Circuit case if a Supreme Court case says it's no good, right? The holding is all about the timing, isn't it? The holding is about the timing, but the 11th Circuit has followed Exxon Mobil when— I just don't see where the inextricably intertwined test has gone away. And it's not our contention that it has. It's just that the question that the simple fact that the plaintiff denies the State Court's conclusion does not make it inextricably intertwined. In order to become inextricably intertwined, one element of that test is that it must seek to invalidate the judgment. Certainly at the point in time that the judgment was vacated, we couldn't do that. But in order for you to win on the two counts that are remaining or that are in dispute here, you will have to show that the State Court, assuming we're not changing the timing business, but assuming that the State Court judgment said foreclosure was good, all these issues about whether insurance had to be paid for, whether the accounting was correct, all that stuff would have to be wrong, right? Well, that would only have to be wrong if it was actually litigated in the State Court trial. All right. Okay. All right. I think we have your argument, counsel. Let's hear from Mr. Gottlieb. Good morning. May it please the Court. Mark Gottlieb on behalf of Appellate. And I think I'd first like to address two questions that the Court has raised this morning. Number one is the issue of whether there was an opportunity to litigate the issues framed by the RESPA error notices in State Court. And unquestionably, and in the record, there was that opportunity. These are issues that get litigated every day in State Court foreclosures. How much is owed? Were payments properly applied? What is the loan due and owing for? Were there escrow advances made that are due and owing and should be included in the final foreclosure judgment? These are issues that are litigated every day and were adjudicated by the judgment. On the face of the judgment, it declares that the appellants were in default for July 1, 2008, something that they disputed their notice of error. So he could have raised these claims in State Court. Absolutely. And the record also reflects… He says in his brief that he's raising Dodd-Frank Act claims and the State Court judgment was rendered one month earlier than the effective date of the Dodd-Frank Act. He's trying to use RESPA as a means of creating a secondary appellate process in Federal Court. I'm a State Court loser, which is what Rooker Feldman says we don't want to have in Federal Court, and I'm going to use the error procedure like an appeal. I didn't take a timely appeal, but I'm going to question what the State Court did through a notice of error procedure. As far as the Dodd-Frank amendments, RESPA was on the books long before this judgment was rendered. They had every opportunity to invoke the error notice and the QWR procedures of RESPA if they wanted to. They didn't do that. If you adopt this argument, they're basically getting to do through the back door what they can't do through the front door. They create a gaping hole in Rooker Feldman and turn Federal Courts into secondary courts of appeal because all you have to do is say, okay, when the judgment's over, I'm going to send my RESPA error notices. I couldn't have litigated that before because I didn't send them until after. But that's the wrinkle in the case now. It's not the judgment is over. The judgment was vacated. And so if the judgment was vacated, he no longer has a foreclosure judgment against him. He was successful in getting the foreclosure judgment vacated. He's not a State Court loser. He's a State Court winner. Let me just say this. Number one, as far as being successful in getting the State Court judgment vacated, the State Court judgment was not vacated because it was wrong, because it was erroneous. It was vacated on a stipulation of the parties because, although it was under no obligation to do so, something that they've since conceded, Appellee granted them a loan modification under which all of the amounts were stipulated to. They stipulated to the default on the face of that modification and agreed to pay all those amounts in a new loan. So has he been injured by a State Court judgment? He has not been injured by a State Court judgment. Well, that's what Rooker-Feldman is all about, is to prevent you from coming to federal court to complain about a State Court judgment that you've been injured by. Two different questions. He's not been injured by the State Court judgment. The State Court correctly determined the issues. He's claiming that he's been injured by the State Court judgment. He's asking this court or asking the lower court to effectively reverse the findings of the State Court and decide— I don't think it matters how it got vacated. I don't see why it matters how it got vacated. It's gone. I agree with you. So whatever the district judge would do now would not tread upon any judgment of the State Court. The question that I have in this case is do we judge this by what happened at the time of the amended complaint or do you judge it at the time of the original complaint? That's my question. And I think that the Supreme Court guidance in Grupo Dataflux provides the answer to that question. In that case, and they refer to it as Hornbook law, they made it clear— That's Justice Scalia. He loves the time of filing. He loves the time of filing, but that is binding precedent. And it does say that time of filing for purposes of subject matter jurisdiction, time of filing is when we look to— and it explains the rationale for that rule. And I think—but is that a case where—isn't it the opposite? Like you would be finding jurisdiction? I mean, that was the—is that the Mexican companies? Yeah, that's the Mexican companies. The Mexican companies, they were not diverse at the time the action was filed because there were limited partners, Mexican limited partners on one side of the equation and a Mexican entity on the other side of the equation. After the action was filed and had been litigated, the Mexican partners left. And they said, okay, problem cured. And importantly, what Justice Scalia said is we can't rely on expedience or convenience to overcome subject matter jurisdiction bars that exist at the time of filing. There's so many differences. I mean, you know, it's a diversity case. There wasn't any mistake at the time of filing as to what the jurisdiction was in the diversity case. It's just that the partners changed. And you have, you know, you have diversity jurisdiction, which is already kind of narrow anyway. And then you have this change, which is quite different. But I don't see that the reasoning in Grupo is the reasoning that you would apply to a Rooker-Feldman case, where Rooker-Feldman itself is supposed to be interpreted narrowly. Well, I would submit that the same reasoning should apply for a couple of reasons. Number one, subject matter jurisdiction is subject matter jurisdiction. And the Court's pronouncements were that subject matter jurisdiction is to be determined by the circumstances that exist at the time of case filing. Every pronouncement on Rooker-Feldman has made it clear that it is an issue of subject matter jurisdiction, that the Court lacks subject matter jurisdiction to consider the case. But the Rooker-Feldman cases are all about once the Federal Court has jurisdiction, when things happen after the time of filing, do you take it away? I don't know of a case that goes the other way. No, all the Rooker-Feldman cases look at what the circumstances are at the time of filing. There's a judgment in place at the time of filing. No, no, it's like we have cases where at the time of filing there is no judgment. Judgment comes up after the time of filing. You don't divest the Federal Court of Jurisdiction. What we have is the opposite here. Judgment vacated after the time of filing. And the answer may be it's exactly the same. But the question is, how does that fulfill the policy of Rooker-Feldman? I think it actually, the Exxon case, I think actually supports the application of Grupo Dataflex to this situation. It again focuses on what were the circumstances at the time of filing. Subsequent changes, and this is what Justice Scalia said. Subsequent changes can always happen. We don't want to subject the courts to the vagaries of subsequent changes and convoluted litigation of what the meaning of those subsequent changes are, which result in wasteful litigation. We want a rule of certainty. We want a rule of stability. So you're saying, okay, you file an amended complaint. If you filed a new action on this day, there would be no Rooker-Feldman because no policy is offended. If you filed a new action after the impediments were resolved, yes, there would be no impediment. And that's exactly what happened in Grupo Dataflex. And the issue was raised, well, what's the big deal? So what? Since you could file a new action anyway, why bother to dismiss on jurisdictional grounds? And they did because they said you have to have certainty. You have to have a rule that provides some kind of stability so that you avoid these situations where cases are filed, where a court has no jurisdiction, and then based on the vagaries of subsequent circumstances, that issue may change and then we end up litigating that. This creates certainty where we don't end up wasting years litigating a case that we don't know what the subsequent circumstances may or may not be. I would also add that these claims that he raises in the Third Amendment complaint, forced place insurance and misapplication of payments, were they raised before in the First and Second Amendment complaint? It's the same exact claim. The only difference is that he's now raising it after the judgment was vacated as a result of the modification. But still, the issues that are being contested, the issues that he's asking the court to adjudicate, are the same issues that were litigated in the state court. You do admit we have an exception to the rule of you judge everything on the date of filing in the Newman case, right? Yes. That's the different parties. Yes. Okay. You can get rid of non-essential parties. Right. And what Newman said and then Grupo later says is that that exception should really be limited to its unique circumstance. It's not a factual change, it's a procedural change. It's the dropping of a party that destroyed diversity, as opposed to what were the external circumstances, what was the citizenship, what were the facts that existed at the time of case filing. And Grupo was very clear that that narrow exception should remain that narrow exception and really apply just in the case of dropping of parties. I would just also like to add that this principle is not limited to diversity cases. We've cited the Supreme Court case, the Lujan case, which extended the same principle to the issue of constitutional standing, that you have to have the determination of whether you have constitutional standing to be in court is a determination made based on the facts and circumstance as they exist at the time of filing. You can't acquire standing two years later. It's a defect that needs to be remedied, and you can't acquire it that way. So we think the law is fairly clear that the proper timeframe for determining jurisdiction is at the time of filing. And if you go to that and you look at the circumstances that existed at the time of filing, there was unequivocally a state court judgment. That state court judgment adjudicated the very issues that are being raised through this notice of error device. And to the extent that the argument's being made, it's sort of a semantic argument. Well, we're not really directly challenging the judgment. We've raised claims under RESPA. This court has repeatedly applied a substance over form test under Rooker Feldman. In every one of the cases, Casale, Alvarez, Springer, the claims that challenged the state court judgment were brought under the guise of some federal statute. 1983, RICO, the Figueroa case lists a string site of decisions where the claims were brought under the FDCPA or TILA. But this court has always looked to the substance of the claim, not the label on the claim, to determine whether in fact it is questioning what the state court did. And if you do that, it is abundantly clear that the state court judgment was being questioned. Any contrary argument is really belied on the face of the notices of error and the pleadings themselves. Each notice of error refers to the foreclosure as a wrongful foreclosure. So there is a judgment that's been entered determining that these amounts are due and knowing that the loan is default, and they're challenging that determination, saying it's a wrongful foreclosure. They repeat those allegations in all the complaints. Wrongful foreclosure, wrongful foreclosure. So while they didn't label this as a direct challenge to the state court's judgment, that is in fact what it was. That's the substance of all the claims. Although it was ultimately amended, their first and second complaints actually had a declaratory relief count in them in which the wherefore clause asked the district court to tell the state court to vacate the judgment. That was part of the relief requested. That is, I don't care how narrowly Exxon dictates that we construe the Rooker-Feldman doctrine, that is right within the bullseye of what the Rooker-Feldman doctrine is intended to do. I know that you had posed a question about whether the inextricably intertwined test has somehow been overcome, and the answer to that is that it has not. This court has had occasion to address Rooker-Feldman a number of times since Exxon was decided, in Casale, in Springer. And it has each time reiterated and applied that inextricably intertwined test to bar challenges to state court judgments under the guise of 1983 claims or RICO claims or whatever they might be under Rooker-Feldman. I'd also just like to briefly address, I think the court addressed it, but I just want to briefly address this issue about the PCA decision out of the Fourth Circuit. That case, a couple of things about that case. Number one, it's an unpublished PCA decision out of the Fourth that has limited, if any, precedential value here. But more importantly, it clearly articulates a different Rooker-Feldman standard than this court follows, as the court pointed out. In that case, the lower court applied the inextricably intertwined standard identical to the standard that this court has applied in Casale and Alvarez and a number of other cases. And the Fourth Circuit reversed, saying essentially that's no longer the test for us, at least post-Exxon. So they're applying a different test than this court is applying. And lastly, on the face of that decision, there's insufficient discussion or facts about the state court judgment or the notices of error for this court to make any kind of evaluation or comparison to what's going on in this case. They don't describe the contents of the state court judgment and what was described in the notices of error. Certainly nobody's arguing that if a judgment exists, any and every notice of error, regardless of content or subject matter, and any rest of the claim based on it is barred. We're not arguing that. But in this case, these notices of error, they might as well have been labeled notices of appeal. They directly questioned what the state court had adjudicated. So at the time of filing, unquestionably, Rooker-Feldman applied, and we submit that the subsequent change doesn't alter the jurisdictional determination, that the jurisdiction was properly determined by the lower court as of the circumstances that existed at the time of filing. So we respectfully request that the lower court's order be affirmed that they correctly determined that they lacked subject matter jurisdiction under the Rooker-Feldman doctrine. Thank you, counsel.  Thank you, Your Honor. Counsel argues that but for the application of the Rooker-Feldman doctrine in this case, then borrowers could always challenge foreclosure judgments through the rest of the procedures. However, that argument overlooks that preclusion would ordinarily operate to prevent that. It's not a question of whether or not the judgment is final. The question is how that judgment's finality is evaluated as it impacts federal jurisdiction. And the irony is because Rooker-Feldman is a dismissal for lack of subject matter jurisdiction and, therefore, requires dismissal without prejudice, that the borrower who believes that they have the grounds to pursue a RESPA claim that may be in tension with the state court's foreclosure judgment would still be free to do so under the federal statute but in state court because, obviously, Rooker-Feldman wouldn't apply in state court. So that only highlights why the issue should be evaluated, not from a jurisdictional and a federal court jurisdictional perspective, but from a substantive preclusion perspective. We believe under that analysis, which the district court did not engage in, that analysis would come out in favor of the borrower in this case. I would also want to point out that Rule 15 itself says that a borrower, or I'm sorry, a plaintiff may file a supplemental complaint even when the initial complaint is defective in alleging the court's jurisdiction. So that points against the absolute bar. We know that this isn't a defect in the allegation. The facts were different at the time of filing the complaint, not that you forgot to make an allegation about those facts. That's correct. And it's true that the allegation was changed to match the facts, but Rule 15 doesn't say that that cannot be done. And the only authority that says that a change in facts does not change jurisdiction comes up in the diversity jurisdiction context. And there is no exception to diversity jurisdiction. Rooker-Feldman is a much narrower doctrine. It does have exceptions. One exception would be when the federal plaintiff didn't have an opportunity to litigate the federal claim. That provides it's not a rigid doctrine like diversity, and therefore it needs to be evaluated differently. In this case, also the time of filing rule, I don't believe either any of the cases actually discuss or deal with the situation where there was an amended complaint. And I don't know that the time of filing rule, if there's any authority for the proposition, that the time of filing doesn't refer to the amended complaint. Generally speaking, when a complaint is amended, the prior complaint becomes a nullity. But in this case, the claims that are raised in the Third Amendment complaint are the same claims that were raised in the original complaint, right? With respect to this defendant, yes. That's correct, Your Honor. Okay. All right. I think we have your argument. Thank you. Court is in recess until 9 o'clock tomorrow morning.